UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANIEL J. RYAN, et al.

                 Plaintiffs,

                                      Civil Action No.: 24-CV-536

vs.

TOWN OF AMHERST, et al.

                 Defendants.
_____

# PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO THE MOTION TO DISMISS BY
## <u>DEFENDANTS KATHERINE LAVEAN AND EVELYN FOREMAN</u>

**RUPP PFALZGRAF** LLC
*Attorneys for Plaintiffs*
R. Anthony Rupp III, Esq.
Chad A. Davenport, Esq.
Taylor L. Kent, Esq.
1600 Liberty Building
Buffalo, New York  14202
rupp@rupppfalzgraf.com
davenport@rupppfalzgraf.com
kent@rupppfalzgraf.com
(716) 854-3400

## PRELIMINARY STATEMENT

This case presents a chilling abuse of government power that tore apart a family and placed a vulnerable teenage girl in grave danger.  Defendants Katherine LaVean and Evelyn Foreman (the "CPS Defendants"), tasked with protecting children, instead conspired to conceal a 16-year-old girl from her loving parents and facilitated her residence with a sexually abusive boyfriend.  For three harrowing months, Mya endured daily physical, sexual, and verbal abuse while the defendants turned a blind eye.  The CPS Defendants not only failed to investigate Mya's living situation, but they also actively thwarted her parents' desperate attempts to find and protect their daughter.  When Daniel and Tara voiced their justified concerns, the CPS Defendants retaliated by filing false reports of child abuse against them.

The facts alleged in the Complaint paint a disturbing picture of government officials substituting their judgment for that of fit parents, with catastrophic consequences.  The CPS Defendants now seek to evade responsibility for their unconstitutional conduct by arguing that the Complaint fails to state a claim.  But the detailed factual allegations in the Complaint more than suffice to state plausible claims for, inter alia, violations of the plaintiffs' fundamental rights to familial association, due process, and equal protection.  The Complaint also adequately alleges the personal involvement of LaVean and Foreman in these constitutional violations.

Moreover, the clearly established nature of the rights at issue precludes dismissal on qualified immunity grounds at this stage.  No reasonable child protective services worker could have believed it was lawful to hide a child from fit parents for months, ignore evidence of abuse in the child's new living situation, and retaliate against parents for seeking to protect their daughter.  At minimum, there are factual disputes regarding the reasonableness of the CPS Defendants' conduct that cannot be resolved on a motion to dismiss.

Furthermore, the CPS Defendants' motion ignores a crucial legal reality: Mya was not old enough for her self-removal to be legally valid without an emancipation order, and the CPS Defendants knew or should have known this. The Complaint alleges that Mya was 16 years old at the time of these events.  (Compl. ¶ 46).  Under New York law, a minor under 18 cannot legally live apart from her parents or guardians without a court order of emancipation or other legal authorization.  The CPS Defendants, as child welfare professionals, should have been well aware of this legal standard.  Their alleged actions in facilitating and concealing Mya's unauthorized living arrangement, rather than working to return her to her legal guardians, represent a clear departure from their professional duties and legal obligations.

This is not a case where a nearly-adult child made a legally valid decision to live independently.  Instead, the Complaint describes a situation where state actors allegedly helped a minor evade her parents' lawful custody, in direct contravention of established law.  Such conduct, if proven, would be patently unreasonable and a violation of clearly established rights. The CPS Defendants cannot hide behind qualified immunity when they allegedly acted in complete disregard of the basic legal principles governing their work with minors and families.

The Court should reject the CPS Defendants' attempt to escape liability for their egregious misconduct and allow this case to proceed to discovery.  Plaintiffs deserve their day in court to seek justice for the trauma inflicted on their family by those sworn to protect children, not endanger them.

## COUNTER-STATEMENT OF FACTS

This case arises from a series of events that unfolded in the summer of 2022, tearing apart the plaintiffs' family and subjecting 16-year-old Mya to months of abuse.  On May

23, 2022, Mya left her home abruptly after her mother, Tara, confronted her about suspected

marijuana use.  When Mya failed to return home that day, Tara reported her missing to the

Amherst Police Department.

Over the next few days, Mya stayed with various friends before ultimately ending

up at the home of C.S., Adam Sidote, and Julie Mudd (the "Sidote home").  What followed was a

three-month ordeal during which Mya endured daily physical, sexual, and verbal abuse from

C.S. while residing at the Sidote home.  Defendants Sidote and Mudd actively concealed Mya

from her family, allowing C.S. to use her as a "stay-at-home girlfriend."  C.S., an unemployed

16-year-old high school dropout, had a history of behavioral and mental health issues.  Quite

disturbingly, the Sidotes had a pattern of taking in runaway minors to be girlfriends for C.S.,

which his parents believed was the only way to control him.

Throughout Mya's absence, her parents, Tara and Daniel, desperately sought

information on her whereabouts.  They repeatedly contacted Amherst Central High School and

the Amherst Police Department, but their pleas for help were met with indifference and

obstruction.  On June 1, 2022, when Tara called the school, she was shockingly told it was not

their responsibility to keep track of Mya's whereabouts, a statement that directly violated school

district policies.

The situation came to a head on June 3, 2022.  Tara and Daniel had arranged to

meet with Mya at the school, but upon arrival, they were ambushed by school officials and police

officers who refused to allow them to see their daughter.  Unbeknownst to Tara and Daniel,

school officials had conspired to ensure Mya did not meet with her parents.  After Tara and

Daniel left, CPS worker Evelyn Foreman briefly met with Mya but inexplicably asked no

questions about her living situation or safety.  School officials then escorted Mya to C.S.'s car in a back parking lot, deliberately avoiding any chance of her parents seeing her leave.

The defendants' actions took a retaliatory turn on June 8, 2022, when Tara and Daniel received letters from CPS Investigator Foreman and her supervisor, Katherine LaVean. These letters stated that a report of child abuse had been made against them on June 3—the very day they had attempted to see their daughter at the school.  This report was clearly made in retaliation for Tara and Daniel's persistent efforts to locate and protect Mya.

Perhaps most egregiously, the only "investigation" conducted by CPS workers Foreman, Filipski, and LaVean was a brief video call with Adam Sidote.  During this cursory inquiry, Foreman never even asked to speak with Mya, the very child whose welfare was supposedly at the heart of their involvement.

Mya remained trapped in this abusive situation at the Sidote home until late August when her parents were finally able to retrieve her.  Since returning home, Mya has revealed the full extent of the physical and sexual abuse she suffered, causing severe emotional distress to her and her parents.  The trauma inflicted on the plaintiffs' family by the defendants' actions continues to this day, driving their pursuit of justice through this lawsuit.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  *See Gianetti v. Blue Cross & Blue Shield of CT., Inc.*,

351 Fed. Appx. 520, 522 (2d Cir. 2009).  A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

Importantly, the Supreme Court has been clear that "[t]he plausibility standard is

not akin to a 'probability requirement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  The plaintiff

need not show that success on the merits is likely or even probable.  Rather, the complaint need

only contain "enough facts to state a claim to relief that is plausible on its face."  *See Twombly*,

550 U.S. at 570.  Moreover, the Second Circuit has long stated that this standard is "'applied

with particular strictness when the plaintiff complains of a civil rights violation.'"  *Irish Lesbian*

*& Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998).


## ARGUMENT I

## PLAINTIFFS HAVE ADEQUATELY ALLEGED THE
## <u>PERSONAL INVOLVEMENT OF THE CPS DEFENDANTS</u>

The CPS Defendants argue that the claims against them should be dismissed for

lack of personal involvement.  This argument fails because the Complaint contains specific

factual allegations regarding LaVean and Foreman's direct participation in the alleged

constitutional violations.

The Complaint alleges that on June 8, 2022, Tara and Daniel received letters from

CPS Investigator Foreman and her supervisor, Katherine LaVean, stating that a report of child

abuse had been made against them on June 3.  (Compl. ¶¶ 154-155).  This report was allegedly

made in retaliation for Tara and Daniel's attempts to see their daughter on June 3.  (*Id.* ¶¶ 156-

160).

The Complaint further alleges that the only "investigation" conducted by CPS workers Foreman, Filipski, and LaVean was a brief video call with Adam Sidote. (*Id.* ¶¶ 164-172). Critically, Foreman never asked to speak with Mya during this call. (*Id.* ¶ 169). This cursory investigation, which failed to even include an interview with the allegedly at-risk child, demonstrates a reckless disregard for Mya's safety and the plaintiffs' constitutional rights, including their First Amendment right to familial association.

Moreover, although the CPS Defendants argue that there are no allegations in the Complaint supporting that they assisted with removing Mya from her parents. This argument, however, mischaracterizes the nature of the constitutional violation alleged and ignores the practical realities of the situation described in the Complaint. While it's true that the CPS Defendants did not physically remove Mya from her home, their alleged actions in hiding Mya and refusing to disclose her whereabouts to Daniel and Tara are tantamount to removal. The Complaint alleges that the CPS Defendants, along with other defendants, actively concealed Mya's location from her parents for months, prevented the parents from seeing Mya when they came to the school, and failed to properly investigate Mya's living situation despite the parents' pleas. (Compl. ¶¶ 76-82, 119-120, 164-172). These actions effectively removed Mya from her parents' care and control just as surely as if they had physically taken her from the home. Courts have recognized that government officials can be liable for interference with parental rights even when they do not directly remove a child. *See Duchesne v. Sugarman*, 566 F.2d 817, 824-25 (2d Cir. 1977) (finding that officials who refused to return children to their mother's custody had deprived her of her right to family integrity). The key issue is not the method of separation, but the deprivation of the parents' right to care for and have access to their child. By allegedly hiding Mya and obstructing Tara and Daniel's efforts to find her, the CPS Defendants effectively

removed Mya from her parents' care without any legal justification or process, violating clearly established constitutional rights.

These allegations are more than sufficient to establish the CPS Defendants' personal involvement in the alleged constitutional violations at the pleading stage. *See Wright v. Smith*, 21 F.3d 496, 501-02 (2d Cir. 1994) (personal involvement may be shown by evidence that the defendant participated directly in the alleged constitutional violation). The Court must accept these allegations as true and draw all reasonable inferences in the plaintiffs' favor at this stage. *See Gianetti*, 351 Fed. Appx. at 522.

## ARGUMENT II

### PLAINTIFFS HAVE STATED VIABLE CLAIMS
### FOR VIOLATIONS OF THEIR CONSTITUTIONAL RIGHTS

The Complaint sets forth detailed factual allegations that, when accepted as true and viewed in the light most favorable to the plaintiffs, state plausible claims for multiple violations of the plaintiffs' constitutional rights.

The CPS Defendants' motion to dismiss attempts to minimize the gravity of their alleged conduct and ignore key factual allegations. However, a careful review of the Complaint reveals that the plaintiffs have adequately pled viable claims for violations of their right to familial association, procedural due process, equal protection, and other constitutional protections. Each of these claims is supported by specific factual allegations that go well beyond mere conclusory statements. The CPS Defendants' arguments to the contrary either mischaracterize the Complaint's allegations or improperly ask this Court to resolve factual disputes at the pleading stage.

As detailed below, the Complaint's allegations are more than sufficient to state plausible claims for relief that should proceed to discovery.

### A.      Plaintiffs Have Stated a Viable Claim for Violations of Their Right to Familial Association.

The Complaint adequately alleges that the CPS Defendants violated the plaintiffs' fundamental right to familial association protected by the Due Process Clause of the Fourteenth Amendment.  Parents have a "fundamental liberty interest in the care, custody, and management of their child[ ]" that is protected by the Due Process Clause.  *Troxel v. Granville*, 530 U.S. 57, 63 (2000).  This right encompasses "the interest of a parent in the companionship, care, custody, and management of his or her children."  *Stanley v. Illinois*, 405 U.S. 645, 651 (1972).

The Complaint alleges that the CPS Defendants, along with other defendants, conspired to conceal Mya from her parents for over three months.  (Compl. ¶¶ 76-82, 119-120, 138-142, 158-163).  During this time, the CPS Defendants allegedly ignored evidence that Mya was in an abusive living situation and failed to conduct a proper investigation.  (*Id*. ¶¶ 164-172).  When Tara and Daniel attempted to see their daughter on June 3, the CPS Defendants allegedly participated in preventing that meeting and then retaliated by filing a false report of child abuse against the Ryans.  (*Id*. ¶¶ 154-160).

These allegations are sufficient to state a plausible claim that the CPS Defendants violated the plaintiffs' fundamental right to familial association.  *See Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2011) (recognizing that it is a fundamental right for families and parents "to remain together [with their children] without the coercive interference of the awesome power of the state").  At a minimum, there are factual disputes regarding the justification for the CPS Defendants' alleged conduct that preclude dismissal at this stage.

B.  **<u>Plaintiffs Have Stated a Viable Procedural Due Process Claim</u>.**

The Complaint also adequately alleges that the CPS Defendants violated the plaintiffs' right to procedural due process.  To state a procedural due process claim, a plaintiff must allege (1) the deprivation of a protected liberty or property interest, and (2) that the procedures attendant to that deprivation were constitutionally insufficient.  *See Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011).

Here, the Complaint alleges that the CPS Defendants deprived the plaintiffs of their protected liberty interest in the care, custody, and control of their child without any procedural protections.  (Compl. ¶¶ 240-251).  The CPS Defendants allegedly participated in concealing Mya from her parents for months without providing any notice or opportunity to be heard.  (*Id*. ¶¶ 119-120, 137-142, 244-246).  When the plaintiffs attempted to see their daughter on June 3, they were denied that opportunity without explanation.  (*Id*. ¶¶ 121-131).

These allegations are sufficient to state a plausible procedural due process claim. *See Southerland*, 680 F.3d at 142 (finding that both parents and children may have a cause of action for violation of the Fourteenth Amendment under a theory of denial of procedural due process).  The CPS Defendants' arguments to the contrary go to the merits of the claim and are inappropriate for resolution on a motion to dismiss.

C.  **<u>Plaintiffs Have Stated a Viable Equal Protection Claim</u>.**

The Complaint adequately alleges that the CPS Defendants violated the plaintiffs' right to equal protection of the laws.  To state an equal protection claim, a plaintiff must allege that: (1) compared with others similarly situated, the plaintiff was selectively treated; and (2) such selective treatment was based on impermissible considerations or malicious or bad faith

intent to injure.  *See LaTrieste Rest. & Cabaret v. Vill. of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994).

      The Complaint alleges that the plaintiffs were singled out and treated very differently from other parents who have struggled with stereotypical teen rebellion in Erie County (and presumably there are many in today's day and age).  (Compl. ¶ 269).  Specifically, the Complaint alleges that the defendants, including the CPS Defendants, repeatedly violated procedures and policies that were in place and followed for other parents and students who were dealing with similar issues.  (*Id.* ¶¶ 270-271).  The Complaint further alleges that this differential treatment was based on the defendants' personal animus towards the plaintiffs.  (*Id.* ¶¶ 156-172).

      These allegations are sufficient to state a plausible equal protection claim under a "class of one" theory.  *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (recognizing class-of-one equal protection claims "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment").  Indeed, it appears that the plaintiffs were singled out from a large group of parents and children in Erie County who have been treated more favorably in similar circumstances, and these allegations are sufficient for the plaintiffs' equal protection claim to proceed under such a theory.

      In addition, the Court should find these allegations sufficient to support an equal protection claim under the theory of selective adverse treatment.  *See LeClair v. Saunders*, 627 F.2d 606, 611 (2d Cir. 1980) ("If Saunders went after Mr. LeClair to *get him*, for any reason, then he should be held liable.") (emphasis in original).  In addition, as the cases indicate, defendants Foreman and LaVean may be held liable for vindictive governmental action as the plaintiffs have set forth a plausible basis for the Court to find that the actions by the CPS

Defendants described in the Complaint were motivated by malice directed at Daniel and Tara. *Romer v. Evans*, 517 U.S. 620, 634 (1996) (allowing equal protection claim to proceed where the allegations in the complaint "raise[d] the inevitable inference that the disadvantage imposed is born out of animosity towards the class affected"); *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 450 (1985) (invalidating permit requirement for group for persons with mental disabilities under rational basis test because it "appears to us to rest on an irrational prejudice" towards identifiable group of individuals).

At a minimum, there are factual disputes regarding the justification for the CPS Defendants' alleged conduct that preclude dismissal at this stage.

### D.    The Complaint States a Valid Claim for Abuse of Process.

The CPS Defendants' argument for dismissal of the abuse of process claim is without merit.  In the Second Circuit, an "abuse of process claim lies against a defendant who (1) employes regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).  The key to an abuse of process claim is the improper use of process after it is issued and can be supported by either being involved in the submitting of the instrument that commences the process or promoting and facilitating the process while it is ongoing.  *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003).

The Complaint adequately alleges both elements.  First, it alleges that the CPS Defendants facilitated the filing and pursuit of a child abuse report against Tara and Daniel with the ulterior purpose of retaliating against them for attempting to see their daughter and to further

obstruct their efforts to regain custody of Mya.  (Compl. ¶¶ 156-160, 277-282).  Second, the Complaint alleges that this process was perverted after issuance by using it to punish Tara and Daniel for asserting their parental rights, rather than for any legitimate child protection purpose. (*Id.*)

These allegations are sufficient to state a plausible claim for abuse of process under § 1983.  Federal courts have held that qualified immunity does not apply to abuse of process claims where, as here, the plaintiff alleges that the defendant acted with an improper purpose.  *See Pinter v. City of New York*, 976 F. Supp. 2d 539, 569-70 (S.D.N.Y. 2013) (holding where there was a factual dispute as to whether an officer acted with malice or an improper purpose, the availability of qualified immunity cannot be decided as a matter of law").

Moreover, the Second Circuit has recognized that the availability of qualified immunity turns on whether a reasonable officer could have believed his action to be lawful in light of clearly established law and the information he possessed.  *Zellner v. Summerlin*, 494 F.3d 344, 367, 370 (2d Cir. 2007).  Given the Complaint's allegations that the CPS Defendants filed a retaliatory and baseless abuse report, no reasonable officer could have believed such action to be lawful.  (*See* Point III, infra).

In sum, the Complaint's allegations of abuse of process are more than sufficient to state a plausible claim for relief under Federal law.  The CPS Defendants' arguments to the contrary either mischaracterize the Complaint or improperly ask this Court to resolve factual disputes at the pleading stage.  This claim should be allowed to proceed to discovery.

### E.     <u>The Complaint States a Valid Substantive Due Process Claim</u>.

The CPS Defendants' argument for dismissal of the substantive due process claim similarly fails. To state a substantive due process claim, a plaintiff must allege conduct that is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

The Complaint alleges conduct that, if true, would indeed shock the conscience. It describes a months-long campaign by government officials, including the CPS Defendants, to keep a minor child hidden from her parents, actively obstructing the parents' efforts to find her. (Compl. ¶¶ 76-82, 119-120). It alleges that the CPS Defendants failed to properly investigate Mya's living situation despite clear red flags, effectively facilitating her continued abuse. (*Id*. ¶¶ 164-172). And it alleges that when Tara and Daniel attempted to assert their parental rights, the CPS Defendants retaliated by filing a false abuse report against them. (*Id*. ¶¶ 154-160).

This alleged conduct goes far beyond mere negligence or poor judgment. It describes a deliberate and sustained effort to interfere with the plaintiffs' fundamental right to family integrity, coupled with a reckless disregard for Mya's safety. Such conduct, if proven, would clearly rise to the level of conscience-shocking behavior required for a substantive due process claim.

The CPS Defendants argue that their conduct was objectively reasonable, but this argument ignores key allegations in the Complaint and inappropriately asks the Court to resolve factual disputes at the pleading stage. Whether the CPS Defendants' conduct was objectively reasonable is a factual question that cannot be resolved on a motion to dismiss, particularly given the serious allegations of intentional misconduct and reckless disregard for child safety detailed in the Complaint. (*See* Point III, infa).

In sum, the Complaint's allegations of multiple violations of the plaintiffs' constitutional rights are more than sufficient to state plausible claims for relief. The CPS Defendants' arguments to the contrary either mischaracterize the Complaint or improperly ask this Court to resolve factual disputes at the pleading stage. These claims should be allowed to proceed to discovery.

## ARGUMENT III

### THE CPS DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY AT THIS PRE-ANSWER STAGE

The CPS Defendants' reliance on qualified immunity is misplaced at this stage of the proceedings. While qualified immunity is an important protection for government officials, it is not an impenetrable shield against all constitutional claims, particularly at the motion-to-dismiss stage where the Court must accept all factual allegations as true.

The defendants cite *Cornejo v. Bell*, 592 F.3d 121 (2d Cir. 2010) for the proposition that child protective services workers are entitled to qualified immunity for their conduct during abuse investigations. However, *Cornejo* is distinguishable from the present case in several critical ways. In *Cornejo*, the caseworkers removed a child from his parents' custody based on a doctor's report of suspected abuse. Here, by contrast, the Complaint alleges that the CPS Defendants actively concealed Mya from her parents without there being any suspicions of abuse by either Daniel or Tara, or at least no reasonable suspicions of abuse, and failed to investigate clear evidence of abuse in her new living situation at the Sidote home. Unlike in *Cornejo*, where the caseworkers acted on a medical professional's concerns, the Complaint here alleges that the CPS Defendants ignored Tara and Daniel's repeated pleas for help and retaliated against them for attempting to see their daughter.

Indeed, the Complaint alleges facts that, if proven, would demonstrate the blatant unreasonableness of the CPS Defendants' actions.  Specifically, it appears that the CPS Defendants took the actions alleged in the Complaint based on their false belief that Daniel was violent towards Mya, even though they had investigated this very allegation just a few months prior and found no evidence to support it.  The Complaint alleges that in February 2022, Mya had reported her father to the police for pushing her during an argument about skipping school.  (Compl. ¶¶ 88-97).  This incident led to a CPS investigation, which concluded on April 7, 2022, over two months before the incidents at Amherst Central High School, with a finding that the allegations of abuse or maltreatment were "unfounded."  (*Id.* ¶ 100).  Despite this recent investigation clearing Daniel of any wrongdoing, the CPS Defendants allegedly proceeded to conceal Mya from her parents and file a retaliatory abuse report against them just two months later.  (*Id.* ¶¶ 154-160).  No reasonable caseworker would have taken such drastic actions based on allegations that had so recently been investigated and determined to be unfounded.  This blatant disregard for their own recent findings further undermines any claim to qualified immunity at this stage.

The CPS Defendants also rely on *Tenenbaum v. Williams*, 193 F.3d 581 (2d Cir. 1999) to argue for "substantial protection" for caseworkers.  However, *Tenenbaum* actually supports the plaintiffs' position.  While the court in *Tenenbaum* recognized the difficult choices caseworkers face, it also stated that caseworkers can be liable when, as the CPS Defendants did here, they fail to obtain a court order before removing a child in non-emergency situations.  Id. at 594 ("[T]he mere 'possibility' of danger is not enough . . . If it were, officers would always be justified in seizing a child without a court order whenever there was suspicion that the child might have been abused . . . The law thus seeks to strike a balance among the rights and interests

of parents, children, and the State.")  The Complaint here alleges that there was no emergency justifying the CPS Defendants' actions in concealing Mya from her parents for months without any court involvement.

Furthermore, the defendants' citation to *Defore v. Premore*, 86 F.3d 48 (2d Cir. 1996) is inapposite.  *Defore* involved a situation where a caseworker removed children based on a court order.  *Id.* at 50.  Here, the Complaint alleges that the CPS Defendants acted without any court authorization in keeping Mya from her parents.

The defendants argue that the "reasonable basis" test from *Wilkinson v. Russell*, 182 F.3d 89 (2d Cir. 1999) shields them from liability.  However, *Wilkinson* actually supports denying qualified immunity at this stage.  In *Wilkinson*, the Second Circuit gave the clear direction that caseworkers could be liable if they consciously disregarded a highly predictable consequence of their actions, including separating children from their parents based on allegations of abuse without ensuring that the decision is "consistent with some significant portion of the evidence before them."  *Id.* at 107 (stating "from this day forward, these and other case workers should understand that the decision to substantiate an allegation of child abuse on the basis of an investigation similar to but even slightly more flawed than this one will generate a real risk of legal sanction").  The Complaint here alleges exactly that—i.e., that the CPS Defendants consciously disregarded the obvious risk of harm to Mya by failing to investigate her living situation and concealing her from her parents.

Moreover, the CPS Defendants' reliance on *Van Emrik v. Chemung County Dep't of Soc. Servs.*, 911 F.2d 863 (2d Cir. 1990) is misplaced.  *Van Emrik* involved a brief, temporary removal of a child based on a doctor's recommendation.  *Id.* at 865.  The Complaint here alleges a months-long separation orchestrated by the CPS Defendants without any medical justification.

-16-

The CPS Defendants also cite *Estate of Keenan v. Hoffman-Rosenfeld*, 833 Fed. Appx. 489 (2d Cir. 2020) to argue that they had a "reasonable basis" for their actions. However, *Keenan* involved caseworkers relying on a physical evaluation in their investigation that led to a finding of significant injuries to a previously healthy three-month old baby. *Id*. at 491-492. Here, the Complaint alleges that the CPS Defendants conducted virtually no investigation at all, failing even to speak with Mya during their sole video call about her living situation.

Finally, the CPS Defendants' citation to *Southerland v. City of New York*, 680 F.3d 127 (2d Cir. 2012) actually undermines their qualified immunity argument. In that case, the Second Circuit observed that caseworkers are not entitled to qualified immunity when they remove children without parental consent or a court order in non-emergency situations. Id. at 149 ("As a general rule . . . before parents may be deprived of the care, custody, or management of their children without their consent, due process -- ordinarily a court proceeding resulting in an order permitting removal -- must be accorded to them.") (internal quotations and citations omitted). The Complaint here alleges precisely such a non-emergency, unauthorized separation of Mya from her parents.

In sum, the cases cited by the CPS Defendants are readily distinguishable and do not support granting qualified immunity at this stage. The Complaint alleges conduct that goes well beyond mere negligence or poor judgment—it describes a concerted effort to keep a child from her parents without justification and a failure to investigate clear signs of abuse. Such conduct, if proven, would violate clearly established law of which any reasonable caseworker would have been aware.

At minimum, there are factual disputes regarding the reasonableness of the CPS Defendants' conduct that preclude a finding of qualified immunity on a motion to dismiss. As

the Second Circuit has held, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). Under this stringent standard, the Complaint's detailed factual allegations are more than sufficient to overcome the qualified immunity defense at this stage.

## ARGUMENT IV

### THE PLAINTIFFS HAVE STATED A<br>VIABLE CLAIM FOR FAILURE TO INTERVENE

The Complaint also adequately alleges that the CPS Defendants failed to intervene to prevent violations of the plaintiffs' constitutional rights.  While the duty to intervene is typically applied to law enforcement officers, the Second Circuit has long recognized that child protective services workers may have a duty to intervene to prevent constitutional violations in certain circumstances.  *See Doe v. N.Y.C. Dep't of Soc. Servs.*, 649 F.2d 134, 141-142 (2d Cir. 1981).

The Complaint alleges that the CPS Defendants failed to take reasonable steps to prevent their fellow officers, caseworkers, and school board members from engaging in the illegal acts alleged, despite being present and capable of doing so.  (Compl. ¶¶ 293-301). Specifically, the Complaint alleges that the CPS Defendants were aware of the plan by Amherst Central High School officials to conceal Mya from her parents on June 3 and failed to intervene to prevent this violation of the plaintiffs' constitutional rights.  (*Id*. ¶¶ 119-120, 132-142).

These allegations are sufficient to state a plausible claim for failure to intervene at this stage.  Whether the CPS Defendants had a realistic opportunity to intervene is a question of

fact that cannot be resolved on a motion to dismiss.  *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).


**ARGUMENT V**

**<u>PLAINTIFFS HAVE STATED A VIABLE CONSPIRACY CLAIM</u>**

The Complaint adequately alleges that the CPS Defendants conspired with other defendants to violate the plaintiffs' constitutional rights.  To state a section 1983 conspiracy claim, a plaintiff must allege: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.  *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).

The Complaint alleges that the CPS Defendants conspired with school officials, police officers, and the Sidotes to deprive the plaintiffs of their constitutional rights.  (Compl. ¶¶ 302-308).  Specifically, the Complaint alleges that these defendants agreed to conceal Mya from her parents, prevent Tara and Daniel from seeing their daughter on June 3, and file a false child abuse report in retaliation.  (*Id*. ¶¶ 119-120, 154-160).  The Complaint further alleges several overt acts in furtherance of this conspiracy, including filing the retaliatory abuse report. (*Id*. ¶¶ 154-155).

These allegations are sufficient to state a plausible conspiracy claim at this stage. While the CPS Defendants may dispute the existence of an agreement, such factual disputes cannot be resolved on a motion to dismiss.

## **CONCLUSION**

For the foregoing reasons, the plaintiffs respectfully request that the Court deny the CPS Defendants' motion to dismiss in its entirety.  The Complaint contains detailed factual allegations that, if accepted as true, state plausible claims for relief against defendants LaVean and Foreman for violations of the plaintiffs' constitutional rights.  At a minimum, there are factual disputes regarding the CPS Defendants' conduct and its reasonableness that preclude dismissal at this stage.

The grave nature of the allegations in this case—i.e., government officials actively concealing a child from fit parents and facilitating her residence in an abusive situation—demands a full inquiry that cannot be short-circuited at the pleading stage.  The plaintiffs have suffered immense trauma as a result of the CPS Defendants' alleged conduct and deserve the opportunity to prove their claims.  Justice requires that this case proceed to discovery.


Dated:  August 23, 2024
        Buffalo, New York

                            **RUPP PFALZGRAF** LLC
                            *Attorneys for Plaintiffs*

                            By:_____*s/Chad A. Davenport*_____
                                    R. Anthony Rupp III, Esq.
                                    Chad A. Davenport, Esq.
                                    Taylor L. Kent, Esq.
                                1600 Liberty Building
                                Buffalo, New York  14202
                                (716) 854-3400